UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------X
ANTON PSHENICHNYKH, *an infant under the age of 14 by and through his general guardian, Dmitry Pshenichnykh* and DMITRY PSHENICHNYKH, *individually*,

                                    *Plaintiffs*,

-against-

EAST MEADOW UNION FREE SCHOOL DISTRICT,

                                    *Defendant.*
---------------------------------------------------------------------------X

**MEMORANDUM AND ORDER**
23-cv-7183 (JMW)

**A P P E A R A N C E S:**

    Suzanne Myron, Esq.
    **Law Office of Suzanne Myron**
    6800 Jericho Turnpike
    Suite 120w
    Syosset, NY 11791
    *Attorney for Plaintiffs*

    Steven C. Stern, Esq.
    **Sokoloff Stern LLP**
    179 Westbury Avenue
    Carle Place, NY 11514
    *Attorney for Defendant*

**WICKS**, Magistrate Judge:

    Plaintiff Dmitry Pshenichnykh, individually and on behalf of his infant son, Anton Pshenichnykh ("A.P.") (collectively, "Plaintiffs"), commenced this action against Defendant East Meadow Union Free School District ("East Meadow" or the "District") on September 27, 2023, alleging First Amendment, Fourth Amendment, Fourteenth Amendment, and 42 U.S.C. Section 1983 violations arising from the District's suspension of A.P. from W.T. Clarke Middle School. (ECF Nos. 1, 29.) Upon filing the Complaint, Plaintiffs simultaneously moved for a

preliminary injunction ordering that A.P.'s suspension be "immediately expunged based upon violation of [his] First, Fourth, and/or Fourteenth Amendment rights[.]" (ECF No. 2-1 at 5-6.) On July 12, 2024, the parties advised the Court that they had agreed to a settlement in principle, subject to formal approval of a written agreement. (ECF No. 26.) On August 11, 2024, the parties requested a conference before the undersigned to "discuss some issues relating to a proposed settlement." (ECF No. 27.) At the August 15, 2024 status conference, Plaintiff indicated an Amended Complaint was forthcoming, and the parties represented that they were still negotiating settlement terms. (ECF No. 28.) On September 2, 2024, Plaintiff filed an Amended Complaint (ECF No. 29), and the parties consented to the undersigned's jurisdiction for all purposes. (ECF No. 30.)[1] Now before the Court is a review of a proposed settlement in this matter, in which Plaintiffs seek Court approval of an infant compromise. (ECF No. 31.) Plaintiffs' request is unopposed. For the reasons stated herein, Plaintiffs' motion for approval of the infant compromise (ECF No. 31) is **GRANTED**.

## BACKGROUND

### I.     Factual Background

Plaintiff A.P. is an infant under the age of 14 years old. (ECF No. 31-1 ¶ 1.) Plaintiffs allege they suffered hardship due to the fact Dmitry Pshenichnykh, A.P.'s father, was unable to find enough work as a driver for Uber, Lyft or Doordash in the years 2020 through 2022. (ECF No. 29 at ¶ 7.) During the COVID-19 pandemic, the family lost their in-district apartment, and A.P. attended – and continues to attend – the District's W.T. Clarke Middle School (hereafter, the "Middle School") under the McKinney-Vento Act while he and Dmitry Pshenichnykh live in temporary housing in Hempstead. (*Id*. at ¶ 8.) On March 28, 2023, an incident involving a threat

---

[1] The case was reassigned from District Judge Nina R. Morrison to the undersigned on September 4, 2024. (ECF No. 32.)

2

made at the high school became the subject of discussion amongst schoolchildren in the district after the administration sent out an email to high school parents regarding the incident. (*Id*. at ¶ 9.) At approximately the same time, Plaintiffs allege A.P. was in the bathroom at the Middle School when another student showed him a video of a stabbing that took place at another nearby school. (*Id*. at ¶ 10.) On April 19, 2023, Plaintiffs allege A.P. was in the hallways at the Middle School and spoke to J.M., a student whom he perceived as friendly, about the rumor, remarking: "there's going to be a school shooting." (*Id*. at ¶ 11.) J.M. subsequently told Dean Gustavo Loor ("Loor") that A.P. made a threat using the words "school shooting" in the hallway of the school, and Loor called A.P. down to his office and questioned him. (*Id*.) A.P. denied making a threat. (*Id*.) Plaintiffs allege Loor searched A.P.'s backpack, asked him to lift his t-shirt, and patted him down, and that no weapons were found. (*Id*. at ¶ 12.) School officials later contacted the Nassau County Police Department, and Department personnel interviewed A.P. in an office with an administrator present, apparently at the directive of the Department of Homeland Security, asking him if weapons were kept at home. (*Id*. at ¶ 14-15.)

Plaintiffs allege the District charged A.P. with "possessing a weapon, displaying what appears to be a weapon, threatening to use any weapon[,]" and that assistant principal, Linda Lynch, handed both notice and decision letters for the proposed suspension to Dmitry Pshenichnykh at the same time that day. (*Id*. at ¶ 16.) The police proceeded to question Dmitry Pshenichnykh for approximately 20 minutes regarding whether he kept any weapons at home, and, as they did so, Plaintiffs allege A.P. was forcibly placed in an ambulance and taken to Nassau University Medical Center. (*Id*.) A.P. was released several hours later with a "clean bill of health." (*Id*. at ¶ 17.) While at the hospital, Plaintiffs alleged Dmitry Pshenichnykh was forced

3

to consent to a search of the home by police which took place during the several hours while he was at the hospital. (*Id*. at ¶ 18.)

Defendant ultimately imposed a short-term suspension on A.P. without a hearing on April 19, 2023. (*Id*. at ¶ 6.) Defendant imposed a long-term suspension on A.P. after a superintendent's hearing, which they held in two parts:  Part 1 was held on May 9, 2023, and Part 2 on May 15, 2023, which found A.P. guilty under the New York State  Education Law Section 3214 (3)(a) for threating the "safety, … health and welfare of others" because, according to the Defendant, A.P. himself admitted he said the words "to the effect of 'school shooting.'" (*Id*. at ¶ 6, 31.) Plaintiffs filed an appeal to the board, who is the final policymaker at the district level. (*Id*.)  The board upheld the suspension on August 4, 2023. (*Id*.)  The family filed an appeal requesting a stay with the New York State Commissioner of Education, which was denied on August 29, 2023. (*Id*.)

## II.     **Plaintiffs' Motion for Infant Compromise**

On September 4, 2024, Plaintiffs moved for an Order compromising and settling this action pursuant to Local Civil Rule 87.3, CPLR §§1207-1208, 22 NYCRR §202.67, and Judiciary Law §474. (ECF No. 31.) Plaintiff's motion for infant compromise, which is unopposed by Defendant, specifically seeks an Order that Defendant "expunge any reference to the April 19, 2023 and May 16, 2023 suspensions from A.P.'s school records[.]" (ECF No. 31-3.) In her Affirmation in Support, Plaintiffs' Counsel, Suzanne Myron, asserts that Dmitry Pshenichnykh defended his son regarding allegations by Defendant that A.P. had made a threat at school in May of 2023, and, despite Mr. Pshenichnykh's efforts, A.P. was found guilty of making a generalized threat after a superintendent's hearing, "but was not afforded proper due process and denied freedom of speech." (ECF No. 31-2 at ¶ 2.)[2] Mr. Pshenichnykh filed two

---

[2] In support of their Motion, Plaintiffs additionally submit the Affidavit of Dmitry Pshenichnykh, which makes allegations similar if not identical to the Affirmation in Support. (*See* ECF No. 31-1.)

appeals subsequent to the East Meadow UFSD Board of Education and the NYS Commissioner of Education, and also filed one DASA complaint alleging that the boy who had accused A.P. of making the threat was now bullying A.P. via text message. (*Id*.) The District upheld its previous decision and did not acknowledge the DASA complaint. (*Id*.) Ms. Myron served as *pro bono* counsel for the Plaintiffs: (i) at the two-day May 2023 hearing; and (ii) for the commissioner appeal. (*Id*.)

Ms. Myron further asserts that on September 27, 2023, Plaintiffs filed the initial Complaint alleging that A.P. was mistreated by school personnel which resulted in violations of his First and Fourteenth Amendment rights. (*Id*. at ¶ 3.) In a motion for a preliminary injunction, Plaintiff sought a Court order expunging A.P.'s educational record of the "unfair charges in regards to the April 19, 2023 incident and for damages for his lost wages and late fees on bills, as well as attorney's fees, since Dmitry had to stay home with A.P. while he was on home instruction." (*Id*.) Ms. Myron reports that the District has now offered to expunge the record in regards to A.P, and the Insurance Company has offered a lump sum settlement of $15,000 in regards to Dmitry's lost wages and late fees on bills as well as her attorney fees. (*Id*. at ¶ 4.) Notably, Plaintiffs are not asking for damages for A.P., but are compromising for the expungement. (*Id*. at ¶ 5.)

## **DISCUSSION**

Before an action can be settled by or on behalf of a minor, the parties must seek approval of the Court, which must be embodied in an order, judgment, or decree. *See* Local Civ. R. 83.2. The Court may only grant leave to settle a minor's claim where the proposed settlement is "fair, reasonable, and adequate, [] comparing the terms of the compromise with the likely rewards of litigation." *Neilson v. Colgate-Palmolive Co.*, 199 F.3d 642, 654 (2d Cir. 1999) (citing *Maywalt*

*v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995)). This obligation is founded on the long-standing principle that such parties "are wards of [the] court." *Neilson*, 199 F.3d at 654. "The Court's fairness inquiry is limited: it need not decide the merits of the case or resolve unsettled legal questions." *Vitucci v. Winthrop Univ. Hosp.*, No. 12 CV 4328 DRH GRB, 2014 WL 4659274, at *4 (E.D.N.Y. Sept. 17, 2014). Courts are further "directed to conform the infant compromise proceedings as nearly as possible to New York State statutes and rules, although the Court is authorized to dispense with the New York state requirements 'for cause shown.'" *Id*. at *4-5 (quoting S.D.N.Y & E.D.N.Y. R. 83.2).[3]

Specifically, "[a] strong presumption exists that a settlement is fair and reasonable" where: (i) "the settlement is not collusive but was reached after arm's length negotiation;" (ii) "the proponents have counsel experienced in similar cases;" and (iii) "there has been sufficient discovery to enable counsel to act intelligently." *Id*.; *see also C.M. ex rel. P.M. v. Syosset Cent. Sch. Dist.*, No. CV 11-1402 MKB GRB, 2013 WL 5799908, at *6 (E.D.N.Y. Oct. 25, 2013), *report and recommendation adopted sub nom. C.M. v. Syosset Cent. Sch. Dist.*, No. 11-CV-1402 MKB, 2013 WL 6157188 (E.D.N.Y. Nov. 22, 2013) ("Numerous courts, primarily in the Eastern and Southern Districts of New York, have determined that a strong presumption exists that a settlement is fair and reasonable where (i) the settlement is not collusive but was reached after arm's length negotiation; (ii) the proponents have counsel experienced in similar cases; and, (iii) there has been sufficient discovery to enable counsel to act intelligently.").

Here, the Court finds the proposed infant compromise to be fair, reasonable, and in the best interests of the infant Plaintiff in this case. *First*, the Court finds the settlement was not

---

[3] CPLR § 1208 requires the infant's representative and attorney "to make representations to the Court concerning, *inter alia,* the terms of the settlement, the circumstances giving rise to the action or claim, the extent of the damages sustained by the infant as documented in medical or hospital records, and reasons for recommending the settlement." *Id*. (citing N.Y. C.P.L.R. § 1208 (McKinney)) (emphasis in original).

6

collusive and represents the product of arm's length negotiation. *Second*, the Court finds Plaintiffs' Counsel, Suzanne Myron, is sufficiently experienced in similar cases, as she is a special education lawyer admitted to practice in the Eastern District of New York since 2008, and represented Plaintiffs throughout the superintendent hearings.[4] *Third*, the undersigned finds Ms. Myron's representation and involvement in the superintendent hearings proceeding the instant action has "allowed [her] to intelligently analyze the issues and the proposed settlement." *Vitucci.*, No. 12 CV 4328 DRH GRB, 2014 WL 4659274, at *5.

Other fairness factors include: (i) "the complexity, expense and likely duration of the litigation;" (ii) "the litigation risks as to issues of both liability and damages;" and (iii) "the defendants' ability to withstand a greater judgment." *Id*. In other words, the "Court must compare the terms of the proposed settlement with the likely rewards of litigation." *C.M. ex rel. P.M.*, No. CV 11-1402 MKB GRB, 2013 WL 5799908, at *7. In compliance with N.Y. C.P.L.R. § 1208(b)(1), Plaintiffs' counsel states her reasons for recommending settlement and "adequately demonstrates that settlement is in the best interest of [Plaintiffs] because the rewards of settlement are greater than the risk of litigation." *Vitucci*, No. 12 CV 4328 DRH GRB, 2014 WL 4659274, at *6; *see also* ECF No. 31-2 (explaining that "A.P. desires to move as soon as possible and Dmitry does not want anything on his disciplinary record which is allegedly untrue . . . Dmitry believes that to testify at the proceedings would only remind A.P. of a bad experience. [T]he damages money Dmitry receives will be put towards the family's moving expenses.").[5]

---

[4] *See* The Law Office of Suzanne Myron New York Education Attorneys, https://specialeducationlawyerny.com/attorneys.html.

[5] This Court has previously noted that potential recovery in these types of civil rights cases may be limited "due to [] the absence of physical harm to the minor plaintiff" or "apparent full recovery by the infant plaintiff, who has adjusted well to school." *C.M. ex rel. P.M.*, No. CV 11-1402 MKB GRB, 2013 WL 5799908, at *6.

7

Furthermore, "settling this case now avoids the costs and risks of motion practice," as Plaintiffs previously moved for a preliminary injunction, and Defendants had requested permission to move to dismiss the initial Complaint. *See* ECF Nos. 2-4, 15; *De Alvarez v. City of New York*, No. 10 CV 4434 SJ LB, 2012 WL 2087761, at *2 (E.D.N.Y. May 16, 2012), *report and recommendation adopted sub nom. Alvarez v. City of New York*, No. 10 CV 4434 SJ LB, 2012 WL 2087759 (E.D.N.Y. June 8, 2012) ("Balancing the potential cost and plaintiffs' burden against the prospect of a damage award at trial, the proposed settlement in this case should be approved.").

*Finally*, "[C]ourts afford deference to the parent or legal guardian's view that a proposed settlement is fair for the minor litigant." *Vitucci*, No. 12 CV 4328 DRH GRB, 2014 WL 4659274, at *7; *see also C.M. ex rel. P.M.,* No. CV 11-1402 MKB GRB, 2013 WL 5799908, at *7 ("Courts also give deference to the parent or legal guardian's view that a proposed settlement is fair for the minor litigant.") Mr. Pshenichnykh submits in his Affidavit that he agrees with the terms of the settlement, and wants the Court to approve it on behalf of himself and his son. *See* ECF No. 31-1. Therefore, as A.P.'s legal guardian, Mr. Pshenichnykh supports the settlement as fair to the minor litigant. *See e.g.*, *Vitucci*, No. 12 CV 4328 DRH GRB, 2014 WL 4659274, at *7; *see also C.M. ex rel. P.M.,* No. CV 11-1402 MKB GRB, 2013 WL 5799908, at *7 (internal citations omitted) ("While [C]ourts have held that under New York law it should be presumed that the guardian or parent of the infant is acting in the best interests of the child, no such presumption is required here, as it is abundantly clear that [the infant's parents] undertook significant efforts and expenditures to help their son. Thus, their approval of the settlement as fair, appropriate and in the best interest of their child carries great weight. ").

**CONCLUSION**

For the reasons stated herein, the Court finds that the natural guardian is authorized and empowered to compromise the action on behalf of the infant, and that the East Meadow Union Free School District shall expunge any reference to the April 19, 2023 and May 16, 2023 suspensions from A.P.'s school records. Accordingly, Plaintiffs' Motion for Approval of Infant Compromise (ECF No. 31) is **GRANTED,** and the parties are directed to file a Stipulation of Dismissal on or before November 15, 2024.

Dated: Central Islip, New York
October 16, 2024

**S O   O R D E R E D:**

/s/ *James M. Wicks*
      JAMES M. WICKS
United States Magistrate Judge